L. F. BANNON PLUMBING, HEATING & CONTRACTING CO. v. CITY
OF KINGSTON. (No. 10/32.)

(Supreme Court, Appellate Division, Third Department.   March 3, 1915.)

MUNICIPAL CORPORATIONS (§ 360*)—PUBLIC IMPROVEMENTS—CONTRACTS—CON-
STRUCTION.

A contract with a city for a sewer provided that, if the city engineer's
plans should require the contractor to furnish any material or do any
work which he shall not deem to be included, he should nevertheless fur-
nish the material and do the work, and no claim for compensation should
be made against the city. It also provided that, in case the character of
the ground developed unforeseen conditions requiring additional material
and labor, the contractor should furnish them without extra compensa-
tion, and that in no case should claim be made against the city for extra
compensation, unless in writing approved by the city engineer and filed
with the city clerk at completion. *Held* that, while the city engineer
could not demand an extraordinary amount of extra labor or material,
the contractor could not recover against the city for extra labor or ma-
terial reasonably necessary to the completion of the contract, though he
based his action on a breach of the contract by the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
892, 892½; Dec. Dig. § 360.*]

Lyon, J., dissenting.

Appeal from Special Term, Ulster County.

Action by the L. F. Bannon Plumbing, Heating & Contracting Com-
pany against the City of Kingston. From a judgment for plaintiff,
defendant appeals. Reversed, and complaint dismissed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-
ARD, and WOODWARD, JJ.

William D. Brinnier, Corp. counsel, of Kingston, for appellant.
Walter N. Gill, of Rondout, for respondent.

HOWARD, J.   The plaintiff in this action is the assignee of the
original contractor.   In 1909 the city of Kingston entered into a con-
tract with the original contractor for the construction of a sewer
1,200 feet long in that city.   The contract price was $4,660.   After the
contract was assigned to the plaintiff, he proceeded with the work
and completed it.   During the performance of the work certain chang-
es in the grade, in the depth of the sewer, in the manholes, in the line
of the sewer, and in certain other particulars became necessary and
were ordered by the city engineer.   Some extra material was requir-
ed.   This extra material was furnished, and the changes in the work
were performed, by the contractor, and he has presented a bill of
$491.90 for the same.   The city has refused to pay this bill for extra
work and material, and the action is brought to recover the amount
claimed.

The written contract under which this work was done contains some
very significant clauses:

"If the city engineer's construction or explanation of said specifications,
plans of this agreement, shall require the party of the second part to furnish
any material or to do any work which he shall deem to be not included in this

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agreement, he shall nevertheless furnish such material and do said work, and no claim for compensation therefor shall be made against the party of the first part.

"If the nature or character of the ground or place in which said sewer is to be laid, or if any unforeseen obstruction or difficulty, or if by the action of the elements, or if from any cause or reason the party of the. second part in order to complete this agreement may have to or may be required to do any work or furnish any material which he [deems] not to be included in this agreement [he] shall nevertheless furnish such material and do such work, and no claim for compensation therefor shall be made against the party of the first part. It is the intention of the parties to this agreement that the contract price herein expressed is full compensation for all labor and materials used and employed in building said sewer, and full compensation for the full performance of this agreement by the party of the second part, and that under no circumstances shall the party of the second part have or make any claim against the party of the first part for extra or additional work, or extra or additional material, or shall have or make any claim for any compensation over and above the sum of the contract price for any cause or reason whatever."

This language is unambiguous, sweeping, and comprehensive. Its clear purpose was to forestall and ward off all claims for extra work and material. When the contractor undertook this job, he well knew the drastic character of the contract under which he was bound. He understood, as all contractors must understand, that certain changes from the exact plans and specifications under which he makes his estimates are inevitable. But he was notified in advance by emphatic and unequivocal language that he must take his chances with all this, and could not in any event make any claim for compensation above the contract price. The contractor, a business man, having entered deliberately into a contract of this character, and there being no fraud or deception, it is difficult to see how the terms of the contract can be evaded.

The plaintiff attempts a very ingenious evasion. He does not sue for extra work and material, but for damages which he claims to have sustained because of the alleged violation of the contract on the part of the city. This position of the plaintiff we consider wholy untenable. The city very carefully guarded itself in the contract against this contention. In terms as clear and comprehensive and complete as can be coined out of words, the city reserved to itself the right to require the contractor to furnish work and material not deemed by the contractor to be included in the agreement. Everything was left absolutely to the discretion of the engineer. Quoting again from the contract we find this expression:

"If * * * from any cause or reason the party of the second part in order to complete this agreement may have to or may be required to do any work or furnish any material which he [deems] not to be included in this agreement [he] shall nevertheless furnish such material and do such work, and no claim for compensation therefor shall be made against the party of the first part."

In view of this emphatic and explicit language, how can it be claimed that the city violated its contract by requiring the contractor to perform work and supply materials beyond the terms of the contract? A difference of opinion as to the construction of the language of contracts of this character, and as to the plans and speci-

fications, is inevitable; but the contractor has completely foreclosed himself by the terms of the contract, in this instance, from claiming compensation either on the theory of extra work and material or on the theory of a breach of the contract. From the reiterated reservation in the contract by the city of its right on any occasion or for any reason to require from the contractor extra labor and material, nothing can be more apparent than the legal right of the city to make such requirement. Therefore, if it does do so, there can be no breach of the contract. The city reserved to the engineer that latitude which is always necessary in a work of this character—that is, the right to require a little more to be done, here or there, than might have appeared to the contractor necessary from an inspection of the ground and plans and specifications, or to be included within the contract.

As was said in O'Brien et al. v. Mayor, etc., 139 N. Y. 543, 35 N. E. 323:

"This contract bears evidence of extreme care and caution in its preparation, and it was intended evidently to guard the interests of the city to the greatest extent possible consistently with the procurement of the work by responsible and capable contractors."

The city, in the case before us, well knew, apparently, of the proneness of contractors to ask for extra compensation. These bills for alleged extra labor and material have grown to be almost inevitable. The temptation to present such bills is strong; there is nothing for the contractor to lose by doing so, and everything to gain. The city was aware of this, and it undertook by extreme, certain, and unusual language to guard against it.

The city could not, of course, have demanded an extraordinary or unreasonable amount of extra labor and material. But it was not attempting to gain any such unfair advantage, for it left open to the contractor, in the contract, an opportunity to present to the engineer any honest and legitimate bill for extra compensation; and in case of the approval in writing by that official, such bill could then have been filed with the city clerk, presented for consideration, and audited. Such purpose is indicated by the following clause in the contract:

"It is further covenanted and agreed by and between the parties that under no circumstances shall the party of the second part have or make any claim against the party of the first part over and above the sum of the contract price, unless such claim be made in writing, be approved in writing by the city engineer, and filed by the party of the second part with the city clerk at the time the notice of completion be filed as specified in paragraph 10 of this agreement. Neither the city engineer nor any employé, agent, or servant, or officer of the city of Kingston, has power to waive this provision; and if the party of the second part do any act which is afterward made the basis of a claim for extra compensation, before said party procure the approval in writing of the engineer, they do so at their peril, and the refusal of the engineer to approve any such claim shall release the party of the first part from any liability for the same, although such approval as matter of law and right should have been given."

The plaintiff in this case wholly failed to secure any such written approval on the claim in question, either before or after the work and material were furnished. Note the particular language of the clause:

"If the party of the second part do any act which is afterward made the basis of a claim for extra compensation, before said party procure the approval in writing of the engineer, they do so at their peril."

How can the contractor escape from this emphatic and unambiguous language? He did do this alleged extra work, and did furnish the alleged extra material, without procuring the approval in writing or otherwise; therefore he did it at his peril. Indeed, he made no serious attempt to procure the approval of the engineer; he simply took his chances. Unless we are to hold that these words are wholly useless and meaningless, the plaintiff cannot recover. The very fact that the contractor failed to procure the written approval of the engineer to this claim for extra compensation, while the work was in progress, is a certain indication that neither he nor the engineer regarded it as outside or beyond the terms of the contract. This must be so, for the contractor well knew that a failure to secure this written approval was fatal. He had so contracted.

The language employed in this contract is so plain, unambiguous, positive, and certain that there can be no mistaking its meaning—no misunderstanding it; no misinterpretation. If we refuse to enforce the conditions in this contract, it will be useless in the future for municipalities to attempt to protect themselves from unlawful and extortionate demands; for it will be impossible to phrase language more positive, drastic, and binding than the words employed in this contract.

The judgment of the Special Term, and the judgment of the City Court of the City of Kingston, should each be reversed, with costs, and a judgment rendered for the defendant, dismissing the complaint, with costs.

Judgment of the Special Term and judgment of the City Court of Kingston reversed, with costs in this court and at Special Term. Judgment ordered for defendant, dismissing plaintiff's complaint, with costs. All concur, except LYON, J., who dissents.